## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| reFX AUDIO SOFTWARE INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. TBD |
| | ) | |
| CHIKE OJUKWU, | ) | ***JURY TRIAL DEMANDED*** |
| | ) | |
| *Defendant.* | ) | |
| ———————————————————— | ) | |

### COMPLAINT

Plaintiff reFX Audio Software Inc. ("reFX Audio") brings this action against Defendant, Chike Ojukwu ("Defendant") alleging copyright infringement and contributory copyright infringement, and seeking damages and injunctive relief. reFX Audio alleges as follows:

### JURISDICTION AND VENUE

1.      This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1400(a). Plaintiff has used geolocation technology and information provided by Defendant's Internet Service Provider to determine that, upon information and belief, Defendant may be found in this State.

3.      In addition, this Court has personal jurisdiction over Defendant because he resides within this State and in this District. Defendant conspired to and did commit acts of copyright infringement and contributory copyright infringement statewide and nationwide, including in this

1

State and in this District. Defendant, therefore, should anticipate being haled into court in this State and in this District.

## BACKGROUND

4.      Defendant acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of Plaintiff's ROM synthesizer-plugin software program by means of interactive "peer–to-peer" ("P2P") file transfer technology protocol called BitTorrent.

5.      Defendant acted in a collective and interdependent manner via BitTorrent to unlawfully reproduce and distribute Plaintiff's software including but not limited to Nexus 2.2.0 (referred to as "Nexus Software" or "Software").

6.      The BitTorrent protocol was used by Defendant to engage in mass copyright infringement of Nexus Software by illegally uploading it within multiple BitTorrent swarms. Defendant illegally uploaded and shared Plaintiff's copyrighted software within two swarms.

7.      Plaintiff has retained an Internet investigator who, through the use of proprietary monitoring technology, can and has obtained evidence of the Defendant's IP address uploading the Software. Exhibits A and B, attached, show instances of Defendant uploading two separate hash files, both of which allow for the illegal distribution of the Software.

8.      Plaintiff's investigator has downloaded pieces of the Software from the Defendant on multiple occasions. Exhibits A and B.

9.      P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including software) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers;

2

and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

10. Defendant initiated his infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software. Defendant then intentionally obtained a torrent file (one of the "Swarm Sharing Hash Files" at issue in this suit, 1DCAAFEA49753AF5A83ACBFD9022762138E5CDBD ("Hash 1DCA")) for Plaintiff's Software from the index and intentionally loaded that torrent file into a computer program designed to read such files.

11. With the torrent file intentionally loaded by Defendant, his BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash 1DCA, namely, Plaintiff's Nexus Software, including other peers. The program coordinated the copying of Plaintiff's Software to Defendant's computer from other users, or peers, sharing the Software. As each piece of the Software was copied to Defendant's computer, the downloaded pieces of Plaintiff's Software were immediately made available to all other peers.

12. Defendant performed the similar acts as those described in Paragraphs 10 and 11 to download the Hash File 68EA2EE5281DD2FBA6A33EDB4723209488027192 ("Hash 68EA"), also enabling copying of Plaintiff's Software to Defendant's computer from other users, or peers, sharing the Software.

13. This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. In this case, Defendant

3

participated in two separate swarms, the Hash 1DCA swarm and the Hash 68EA swarm, so as to enable the rapid viral spreading of Plaintiff's Software amongst BitTorrent users. Because of the nature of the BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file. Thus, after Defendant successfully downloaded of a piece of Plaintiff's Software, that piece was then immediately made available to all other users seeking to infringe Plaintiff's copyrights.

14.     Thus, Defendant's distribution of even a single unlawful copy of the Software can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

15.     Essentially, because of the nature of the swarm uploads and downloads as described above, Defendant, in concert with other swarm members, is simultaneously allowing others to steal (download from the swarm) Plaintiff's copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal simultaneous data-sharing swarm is performed because Defendant acts in an interactive manner with other peers, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

16.     In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

4

17.     Upon information and belief, Defendant also acted in concert with other swarm members by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

18.     Upon information and belief, Defendant also acted in concert with other swarm members by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

## PARTIES

19.     Plaintiff is a Canadian corporation located at 6360 202nd Street, Unit 101, Langley British Columbia, V2Y 1N2, that produces, markets and sells sound mixing software.

20.     Defendant, Chike Ojukwu is, upon information and belief, an individual residing at 6408 Cates Avenue #C, University City, Missouri, 63130.

21.     Upon information and belief, Defendant produces and sells pre-recorded musical compositions under the aliases Chike Beatz Ojukwu and/or Chike Beatzdown and/or Chike+Beatzdwn (spelling intentional). See Exhibit C, Websites Hosting Defendant's Music for Sale.

22.     Defendant is a BitTorrent user who, through his computer(s), interconnected with multiple BitTorrent swarms for the sharing of unique files. Each BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

23.     Both the 1DCA Hash and the 68EA Hash provide access to an unauthorized copy of Plaintiff's copyrighted Software.

24.     Defendant's infringements allow him and others to unlawfully obtain and distribute unauthorized copies of Plaintiff's Software for which Plaintiff spent a substantial amount of time, money and effort to produce, market and distribute. The Software is currently offered for sale on its website, www.refx.com.

25.     Each time Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Software to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in the Software's quality or functionality. Thus, Defendant's distribution of even one unlawful copy can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its Software.

26.     Defendant initially became known to Plaintiff by the Internet Protocol ("IP") address assigned to Defendant by his Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of was observed. In addition, and as provided in Exhibits A and B, Plaintiff has learned the torrent files copied and distributed by Defendant – Hash 1DCA and Hash 68EA, and the BitTorrent client application utilized by Defendant – BitTorrent 7.2.1 and 7.7.0.

6

27.     Pursuant to a court order granting Plaintiff's motion for expedited discovery, Plaintiff served a third-party subpoena on Defendant's ISP, Charter Communications ("Charter"). Order Granting Plaintiff's Motion for Expedited Discovery attached as Ex. D.

28.     Before Charter provided any information to Plaintiff, Charter sent notice to the Defendant informing him of the subpoena requesting information, and informing him of his rights to challenge the subpoena. Defendant did not respond to this notice or challenge the subpoena.

29.     Subsequently, Charter produced information to Plaintiff identifying the then Doe Defendant as described above in Paragraph 20. On July 16, 2013, Defendant was severed from the case in which he was a Doe Defendant, *reFX Audio Software, Inc. v. Does 1-97*, No. 13-cv-00409-CEJ.

30.     Plaintiff has attempted to contact Defendant multiple times. Defendant has ignored Plaintiff's attempted contacts.

31.     Included in Plaintiff's correspondence to Defendant was a document entitled "Frequently Asked Questions." This document addresses the issue if the account holder believes he or she might not be the person who downloaded or otherwise infringed the Software. As set forth below, this document informs the recipient that the primary concern is stopping infringement and that Plaintiff will work with any defendant who has been wrongfully identified to determine the identity of the true infringer.

*I know that I personally didn't download this work. What could have happened?*

Your ISP linked your name and address with an IP address that infringed our client's copyrighted work. Regardless of your individual involvement in any download, someone accessed your IP address (and thus your account) and used this resource to download the copyrighted work. Perhaps it was a guest or family member who accessed your IP address for the unlawful download. Our interest is in tracking down the infringer of our client's copyrighted work and to put a stop to the ongoing infringement. We have the tools to work with you to determine who infringed our client's work.

Defendant failed to respond or take any action upon receipt of this letter.

32.     Defendant's silence is troubling because, as described above, each Defendant (and/or his IP address) was a source from which others illegally downloaded Plaintiff's work. Defendant (and/or his IP address) is still a potential source of further illegal distribution of Plaintiff's Software.

## STATEMENT OF FACTS

### THE COPYRIGHTS

33.     Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to the Software.

34.     The Software is directed to a ROM synthesizer-plugin acting as an electronic musical instrument that plays back samples stored in ROM chips to generate sound, commonly known in the industry as a "Rompler." Because it is plug-in software, this Software can only be used in conjunction with professional music software used by professionals such as artists and producers.

35.     As set forth above, the Software incorporates distinctive copyrighted works, including but not limited to, "Nexus 2," "Nexus 2.2.0," "Nexus Expansion Bass" expansion pack, and "Nexus Minimal House 2" expansion pack.

36.     By incorporating a "mock" faceplate into the Software (one example shown in Figure 1, below), a user can manipulate music with the movement of his or her mouse across the faceplate. Plaintiff's Software offers more than 1000 distinctive "factory preset" sounds and music for users to manipulate. Users can also elect to add-on to these 1000 factory presets with over 69 expansion pack sounds.



FIGURE 1

37.     The Software contains a variety of wholly original material that is copyrightable subject matter under the laws of the United States. To date, reFX Audio has secured copyright registrations on two products at issue in this suit.

38.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus 2, Copyright Registration Number TX 7-551-179 ("the '179 Copyright"). See Exhibit E, Nexus 2 Certificate of Registration.

39.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus 2.2.1, Copyright Registration Number TX 7-551-176 ("the '176 Copyright"). See Exhibit F, Nexus 2.2.1 Certificate of Registration.

40.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus Expansion Bass, Copyright Registration Number TX 7-551-724 ("the '724 Copyright"). See Exhibit G, Nexus Expansion Bass Certificate of Registration.

41.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus Expansion Minimal House 2, Copyright Registration Number TX 7-551-181 ("the '181 Copyright"). See Exhibit H, Nexus Expansion Minimal House 2 Certificate of Registration.

42.     Under the Copyright Act, reFX Audio is the proprietor of all right, title, and interest in the '179, '176, '724, and '181 Copyrights (collectively, "the Copyrights-in-suit"), including the right to sue for past infringement.

43.     reFX Audio has in the past and currently is producing, marketing and selling the Software.  Such Software comes in an array of options and pricing, currently: $299 (for Nexus 2 plus 1000 factory presets) and $3,049 (for Nexus 2 plus 1000 factory presets, and all 69 expansion packs).

44.     Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted works and to distribute the copyrighted works to the public.

COPYRIGHT INFRINGEMENT AND BITTORRENT

45.     BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures, television shows, and computer software.  Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously.  The process works as follows:

46.     Users intentionally download a small program that they install on their computers – the BitTorrent "client" application.  The BitTorrent client is the user's interface during the downloading/uploading process.  There are many different BitTorrent clients, all of which are readily available on the Internet for free.

47.     BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

48.     A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies, television programs, and software among other copyrighted content).  The torrent site hosts and distributes small torrent files known as "torrent files."  Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file.  Torrent files interact with specific trackers, allowing the user to download the desired file.

49.     The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency.  This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.

50.     A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content).  A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users.  When a BitTorrent user seeks to download a file, such as Plaintiff's Software, he or she merely clicks on the appropriate torrent file on a

torrent site, and the torrent file instructs the client application how to connect to a tracker that will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

51.     Files downloaded in this method are downloaded in hundreds or thousands of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

52.     Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired software file for download. The downloading user's BitTorrent software then begins downloading the Software file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

53.     The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The hash files shared by Defendant here – Hash 1DCA and Hash 68EA, each provide access to Plaintiff's copyrighted Software.

54.     Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Software on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file.

12

55.     Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Software package when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Software by exchanging the pieces of the Software that each one has.

56.     Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

57.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm and begin to download pieces of the file, the frequency of successful downloads also increase due to the heightened availability of each piece of the desired file.

58.     Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm.

59.     Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

13

60.     Infringers are encouraged to further distribute copyrighted material by the design of many BitTorrent trackers. Trackers will limit the speed at which files may be downloaded by a particular peer if that peer limits the speed at which files may be uploaded from his or her computer, or has a poor upload-to-download ratio.

61.     Plaintiff has recorded Defendant's IP addresses publishing the Software via BitTorrent, as Plaintiff's investigator has downloaded the Software from Defendant's IP addresses on multiple occasions as evidenced by Exhibits A and B.

62.     Defendant, without authorization, copied and distributed the Software owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

63.     Defendant has participated in multiple P2P network swarms that were utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted Software without permission. Exhibits A and B.

64.     Defendant initiated his infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Software. Thereafter, Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such file.

65.     Defendant owns or otherwise has control of a computer or computers which have connected to the Internet via an IP address that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted Software.  Each computer also contained or still contains Plaintiff's copyrighted Software, which was downloaded using the information encoded in the torrent file.

66.     Upon information and belief, Defendant's computer(s) also contained or still contains audio recordings made using the Software.

14

67.     Defendant republished and duplicated the Plaintiff's Software in an effort to deprive the Plaintiff of its exclusive rights in the Software under the Copyright Act.

## COUNT I
## DIRECT INFRINGEMENT OF THE '179 COPYRIGHT

68.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69.     Plaintiff is, and at all relevant times, has been, the copyright owner of the '179 Copyright in Nexus 2, infringed upon by Defendant.

70.     The copyrighted work was infringed upon by Defendant.

71.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software and to distribute the Software to the public.

72.     The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Software, including a version of Nexus 2 (version 2.2.0), to distribute the Software to the public, including hundreds of other BitTorrent users, and/or to make the Software available for distribution to others.   In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.  Defendant's actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.  Exhibits A and B identify the Defendant who has, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

73.     Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

15

74.     As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

75.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT II
## DIRECT INFRINGEMENT OF THE '176 COPYRIGHT

76.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 75 as if fully set forth herein.

77.     Plaintiff is, and at all relevant times, has been, the copyright owner of the '176 Copyright in Nexus 2.2.1, infringed upon by Defendant.

78.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus 2.2.1, and to distribute the Software, including Nexus 2.2.1, to the public.

79.     The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Software, including a version of Nexus 2 (version 2.2.1), to distribute this Software, including to the public, including hundreds of other BitTorrent users, and/or to make this software available for distribution to others. In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.

16

80.     Nexus 2.2.0 is substantially similar to Nexus 2.2.1; Nexus 2.2.1 is a later version with minor upgrades, although the vast majority of both software packages are identical.

81.     Defendant's actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

82.     Exhibits A and B identify the Defendant who has, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

83.     Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

84.     As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

85.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT III
## DIRECT INFRINGEMENT OF THE '724 COPYRIGHT

86.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 85 as if fully set forth herein.

87.     Plaintiff is, and at all relevant times, has been, the copyright owner of the '724 Copyright in Nexus Expansion Bass, infringed upon by Defendant.

17

88.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus Expansion Bass, and to distribute the Software, including Nexus Expansion Bass, to the public.

89.     The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Software, including Nexus Expansion Bass, to distribute the Software, including Nexus Expansion Bass, to the public, including hundreds of other BitTorrent users, and/or to make the Software, including Nexus Expansion Bass, available for distribution to others. In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.

90.     Defendant's actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

91.     Exhibits A and B identify the Defendants who has, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

92.     Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

93.     As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

94.     The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Software,

including Nexus Expansion Bass, made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT IV
## DIRECT INFRINGEMENT OF THE '181 COPYRIGHT

95.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 94 as if fully set forth herein.

96.     Plaintiff is, and at all relevant times, has been, the copyright owner of the '181 Copyright in Nexus Expansion Minimal House 2, infringed upon by Defendant.

97.     Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus Expansion Minimal House 2, and to distribute the Software, including Nexus Expansion Minimal House 2, to the public.

98.     The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has used, and continues to use, BitTorrent software to download the Software, including Nexus Expansion Minimal House 2, to distribute the Software, including Nexus Expansion Minimal House 2, to the public, including hundreds of other BitTorrent users, and/or to make the Software, including Nexus Expansion Minimal House 2, available for distribution to others. In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.

99.     Defendant's actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

100.     Exhibits A and B identify the Defendant who has, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

19

101.    Defendant's acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

102.    As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

103.    The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Software, including Nexus Expansion Minimal House 2, made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT V
## CONTRIBUTORY COPYRIGHT INFRINGEMENT

104.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 103 as if fully set forth herein.

105.    Plaintiff is, and at all relevant times, has been, the copyright owner of the Software infringed upon by Defendant.

106.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software and to distribute the Software to the public.

107.    The Plaintiff alleges that Defendant, without the permission or consent of the Plaintiff, has participated in a BitTorrent swarm directed at making the Software available for distribution to himself as well as others, has used, and continues to use, BitTorrent software to download the Software, to distribute the Software to the public, including hundreds of other

20

BitTorrent users, and/or to make the Software available for distribution to others.   In doing so, Defendant has violated Plaintiff's exclusive rights of reproduction and distribution.

108.   By participating in the BitTorrent swarm with other peers, Defendant induced, caused or materially contributed to the infringement of Plaintiff's copyright and exclusive rights under copyright by other peers and other swarm members.  Exhibits A and B identify the Defendant who has, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyright by other peers and swarm members.

109.   Defendant's acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

110.   As a result of Defendant's contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

111.   The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further contributing to the infringement of Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For entry of preliminary and permanent injunctions providing that Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Software ("Plaintiff's Software"), including without limitation by using the Internet to reproduce or copy Plaintiff's Software, to distribute Plaintiff's Software, or to make Plaintiff's Software available for distribution to the public, except pursuant to a

21

lawful license or with the express authority of Plaintiff.  Defendant also shall destroy all copies of Plaintiff's Software that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the downloaded Software transferred onto any physical medium or device in Defendant's possession, custody, or control.

B.  For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff.

C.  For Plaintiff's costs.

D.  For Plaintiff's reasonable attorney's fees.

E.  For such other and further relief as the Court deems proper.

Respectfully submitted,
PLAINTIFF reFX AUDIO SOFTWARE INC.

By its attorneys,

SIMMONS BROWDER GIANARIS
ANGELIDES & BARNERD LLC

Dated:  August 22, 2013

By: /s/ Paul A. Lesko
Paul A. Lesko – E.D. Mo. Bar No. 51914
One Court Street
Alton, IL 62002
(618) 259-2222
(618) 259-2251-facsimile
plesko@simmonsfirm.com

*Attorney for Plaintiff reFX Audio Software, Inc.*